UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL D. JACKSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LAS VEGAS, *et. al*,<br><br>　　　　　Defendants. | Case No. 2:14-cv-01794-RFB-VCF<br><br>**ORDER** |

## I.　INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 19. This case arises from the termination of Plaintiff Michael Jackson from his position with the Defendant City of Las Vegas's Fire and Rescue Department in May 2013. For the reasons stated below the Court denies Defendant's Motion.

## II.　BACKGROUND

Plaintiff alleges the following causes of action: 1) Title VII – Race discrimination; 2) NRS Section 613.330 – Race discrimination; 3) Section 1983 – Equal Protection; 4) Section 1985 – Conspiracy for discrimination; 5) Section 1981 Claims against the City; 6) Tortious discharge; 7) Negligent training, supervision and retention; and 8) Defamation.

This case was removed on October 28, 2014. ECF No. 1. Defendant filed a Motion for Summary Judgment on February 3, 2016. ECF No. 19. The Court held a hearing on July 20, 2016 regarding this Motion.

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED AND DISPUTED FACTS

The following facts are undisputed by the parties: Plaintiff Michael Dwayne Jackson is an African American male. Plaintiff was hired by Las Vegas Fire and Rescue (LVFR) on or about March 29, 1993. D.'s Ex. A at 6. Jackson was promoted to Fire Training Officer on or about April 2006. Id. at 7. Jackson was certified as a Fire Instructor by the Nevada State Fire Marshal. Id. at 8. He was also a Nevada Fire Marshal Test Validator. Id. at 9.

LVFR began a Fire Academy in October 2012 to admit the 2013 Class. Id. at 21. The 2013 Class was unsuccessful in obtaining certification in Hazardous Materials and Hazardous Communications via the Nevada State Fire Marshal in October 2012. Id. at 26. The second attempt to certify the Class was on January 11, 2013. Id.

Battalion Chief Maureen Higgins-Teague, Jackson's Supervisor, requested Jackson to come in on his day off, on overtime, to proctor the practical and written exams for Hazardous Materials and Hazardous Communications. Id. The practical component of the exam never occurred. Id. at 47. While Jackson did not see anyone cheating during the exam, he admitted to leaving the room multiple times during the exam. Id. at 41, 65. Jackson failed to read all of the 17

1  points for their instructions [to the recruits] prior to each exam, as required by the State Fire
2  Marshal's Procedures. Id. at 41. Jackson signed off on the exams indicating that both the practical
3  and written portions of the exam were complete. Id.

4  As a result of an internal investigation of the January 2013 examination, Jackson was
5  terminated from his employment with LVFR on May 15, 2013. D.'s Ex. C. Additionally, the 2013
6  Class failed their examinations and were separated from the City of Las Vegas. D.'s Ex. B. Aside
7  from Jackson and the 2013 Class, no one else was disciplined regarding the incident.

8  The following facts remain disputed. The parties dispute whether Jackson was provided
9  the proper resources to conduct both the practical and written components of the exam he was
10  asked to proctor, and whether Jackson was even authorized to administer the written exam. The
11  parties dispute in what capacity Jackson was performing while proctoring the exam—specifically,
12  whether he was working in the capacity of a Lead Examiner for the State Fire Marshal's Office or
13  for LVFR. The parties dispute whether LVFR failed to follow policy in scheduling the
14  examination. The parties dispute whether there was a pattern and practice of just signing off on
15  examinations for LVFR personnel, regardless of whether the applicant actually successfully
16  completed the exam. The parties dispute whether Jackson was following orders from Ms. Higgins-
17  Teague when he signed the practical exam forms without completing the actual testing. The parties
18  dispute whether Jackson was chosen to be the proctor and therefore fail because of a discriminatory
19  culture within the LVFR against people who are African American. The parties dispute whether
20  Fire Chief Smith knew about Ms. Higgins-Teague's actions and assisted her in discriminating
21  against Jackson. The parties dispute whether Jackson was terminated as a result of a
22  comprehensive investigation by LVFR.

**V.    DISCUSSION**

In its Motion, Defendant argues it is entitled to summary judgment on all claims because
LVFR had just cause for termination. Specifically, Defendant argues that Jackson admitted to the
allegations against him in the Notice of Administrative Hearing for Proposed Disciplinary Action
("Notice") for: 1) leaving the testing room during the exam; 2) failing to properly instruct recruits

1 prior to testing; and 3) falsifying documents to suggest that practical tests were administered when they were not. D.'s Ex. B.

In response, Plaintiff states that it construes Defendant's argument as primarily an argument against Plaintiff's Title VII race discrimination claim and addresses the Motion as such. Plaintiff argues he was not terminated for just cause, and that the bases for his termination are mere pretext for the true reasons for firing him: unlawful race-based discrimination.

The Court agrees that the Defendant's argument most resembles a challenge to Plaintiff's discrimination claim, though the Defendant maintains its argument applies to Plaintiff's eight causes of action. Nonetheless, for the reasons stated, the Court is unpersuaded that Defendant is entitled to summary judgment, and therefore denies Defendant's motion as to all claims, to the extent its Motion can be construed as applying to all claims.

**A. Race discrimination**

    **1. Legal Standard**

The Supreme Court has held that a "worker who seeks to show disparate treatment through indirect evidence may do so through application of the McDonnell Douglas framework. That framework requires a plaintiff to make out a prima facie case of discrimination. But it is 'not intended to be an inflexible rule.' Rather, an individual plaintiff may establish a prima facie case by 'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII. The burden of making this showing is 'not onerous.' In particular, making this showing is not as burdensome as succeeding on 'an ultimate finding of fact as to' a discriminatory employment action. Neither does it require the plaintiff to show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways." Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1353-54 (2015) (internal citations omitted).

"To establish a prima facie case under McDonnell Douglas, a plaintiff must demonstrate that: (1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class

1  received more favorable treatment." Anthoine v. N. Cent. Ctys. Consortium, 605 F.3d 740, 753
2  (9th Cir. 2010).

3  Nevada applies the same analysis to its own state anti-discrimination laws. See Pope v.
4  Motel 6, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964
5  Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the
6  federal courts for guidance in discrimination cases. Under NRS 613.330(1), it is an unlawful
7  employment practice to discharge any individual because of his or her race, color, sex, religion,
8  sexual orientation, age, disability or national origin.").

**2. Discussion**

Defendant does not appear to argue Plaintiff has not made a prima facie case of discrimination.  Rather, Defendant appears to argue that it has a legitimate, nondiscriminatory reason for terminating Plaintiff: that he allegedly failed to read instructions prior to the exam; left the room on multiple occasions, and indicated that the Class had completed the practical component of the exam when they had not. Therefore, under the McDonnell Douglas framework, Plaintiff must show by a preponderance of the evidence that these alleged reasons are pretextual.

Plaintiff argues the testing procedure violations were a mere pretext for his termination for the following reasons: 1) there is no evidence that such violations are a terminable offense and, relatedly, that Plaintiff's signing off on the form indicating that the exams were complete was sanctioned activity at LVFR by proctors, regardless of whether the exam was properly completed; 2) Plaintiff's supervisor's lack of experience and careless oversight created a "flawed testing environment" on January 11, 2013 that was the true reason why the Class failed the test; 3) Plaintiff was set up to fail from the beginning and was a scapegoat because he is African-American, and there is a history of discrimination against African-Americans by Defendant.

In reply, Defendant argues that any minor errors by supervisor Teague had no impact on the actions taken by Plaintiff that resulted in his termination. Defendant also argues that Jackson was not set up to fail, and that his own decisions resulted in his termination. Last, Defendant argues that Jackson's violations, which resulted in recruits failing the exam and $700,000 in damages, was a terminable offense.

- 5 -

1    The Court finds that the Plaintiff has sufficiently met his burden in showing, by a preponderance of the evidence, that Defendant's alleged basis for his termination was pretextual. In particular, the Court finds that, given that signing off on these exams was arguably sanctioned activity according to former employee Douglas Johnson's testimony. P.'s Ex. W at 8 ("Q: Would it have been proper for him to sign off on a certification that wasn't complete or that was incorrect? A: It wouldn't have been unusual with the history that we had with the state."). The Court also finds that Plaintiff has presented evidence of a culture of discrimination against African-Americans by Defendant. Plaintiff provided testimony by Mr. Johnson, an African-American man who worked as a battalion chief for years, regarding this culture. P.'s Ex. W at 25-26 ("[D]o you believe that blacks were treated differently than other races in the fire department? A: Yes…we were definitely more scrutinized."). Specifically, Mr. Johnson testified that, as a result of this culture, an anonymous survey was conducted whose results shocked the City and, as a result, the City began a diversity class, though it was never completed. Id. at 25-27. Last, the Court finds that Plaintiff has provided evidence that other LVFR employees who were involved in the January 2013 incident—namely his supervisor Teague—were not disciplined. The Court agrees that this supports Plaintiff's argument that the reasons for firing Plaintiff were pretextual. The Court is unpersuaded by Defendant's rebuttal that the separation of the recruits, whose employment with LVFR was contingent upon passing the exam, rebuts the fact that Teague and other employees of LVFR did not suffer adverse employment action.

Therefore the Court denies Defendant's Motion as to Plaintiff's race discrimination claims. The Court does not address Plaintiff's miscellaneous arguments regarding that Defendant LVFR had no jurisdiction to discipline him while he was working as a proctor, because proctors serve the State Fire Marshal's Office. P.'s Ex. Q (request for state certification testing), Z (timesheet).

Moreover, given that Defendant itself maintains that its argument applies to all of Plaintiffs' causes of action, for the same reasons stated above, the Court denies Defendant's motion with respect to the remaining causes of action.

## VI. CONCLUSION

Therefore, the Court DENIES Defendant's Motion for Summary Judgment. ECF No. 19.

**DATED**: <u>September 19, 2016</u>.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**